# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

TIMOTHY SLATE,

    Plaintiff

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security Administration,

    Defendant

Case No.: 3:21-cv-00298-CSD

**Order**

Re: ECF Nos. 20, 21

Before the court is Plaintiff's Motion for Summary Judgment. (ECF No. 20.) The Acting Commissioner filed a Cross-Motion to Affirm and Response to Plaintiff's motion. (ECF Nos. 21, 22.) Plaintiff filed a response to the cross-motion. (ECF No. 26.)

For the reasons stated below, Plaintiff's motion is granted insofar as this matter is remanded for further administrative proceedings consistent with this Order, and the Acting Commissioner's cross-motion to affirm is denied.

## I. BACKGROUND

In August of 2015 , Plaintiff completed applications for disability insurance benefits (DIB) under Title II of the Social Security Act and for supplemental security income (SSI) under Title XVI of the Social Security Act. (Administrative Record (AR) 213-216.) While he originally alleged disability beginning on April 15, 2005, the onset date was subsequently amended to March 12, 2013. (AR 36-37, 448.) The applications were denied initially and on reconsideration. (AR 130-139, 143-149.)

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 151-152.) ALJ Janice Shave held a hearing on July 13, 2018. (AR 31-69.) Plaintiff, who was represented by counsel, appeared and testified on his own behalf at the hearing. Testimony was also taken from a vocational expert (VE), Kristan Cicero. On November 8, 2018, ALJ Shave issued a decision finding Plaintiff not disabled. (AR 13-24.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ Shave's decision the final decision of the Commissioner. (AR 2-7.) On November 12, 2019, Plaintiff commenced an action for judicial review under 42 U.S.C. § 405(g), which was assigned case number 3:19-cv-00682-CLB. (AR 498-500.) After Plaintiff filed his motion for summary judgment, the parties stipulated to remand the case for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g). (AR 504-08.)

The Appeals Council vacated ALJ Shave's decision and remanded the case to another ALJ. (AR 514-516.) ALJ William Kurlander held a hearing on February 10, 2021. (AR 439-471.)  Plaintiff appeared, represented by counsel, and testified on his own behalf at the hearing. Testimony was also taken by VE Alan Cummings. On April 5, 2021, ALJ Kurlander issued a decision finding Plaintiff not disabled. (AR 414-432.)

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Plaintiff argues: (1) the two ALJs impermissibly manipulated their residual functional capacity (RFC) findings to reach a predetermined finding of nondisability; (2) the ALJs failed to adequately address the opinions of consultative examining psychologist Paul Binks, Ph.D.; and (3) ALJ Kurlander failed to properly assess Plaintiff's credibility.

The Acting Commissioner, on the other hand, argues: (1) substantial evidence supported the RFC finding; (2) the ALJ properly evaluated Dr. Binks's opinions; and (3) the ALJ properly discounted Plaintiff's subjective symptom testimony.

## II. STANDARDS

### A. Five-Step Evaluation of Disability

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her physical or mental impairment(s) are so severe as to preclude the claimant from doing not only his or her previous work but also, any other work which exists in the national economy, considering his age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitations, and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and  416.945(a)(3).

A claimant can return to previous work if he or she can perform the work as he or she actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a VE or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

If the Commissioner establishes at step five that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b), § 416.966(b). Conversely, if the Commissioner determines the claimant is unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**C. Judicial Review & Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522 (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.* (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

### III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, ALJ Kurlander found Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of March 12, 2013. (AR 420.)

At step two, ALJ Kurlander concluded Plaintiff had the following severe impairments: unspecified bipolar and related disorder by history, personality disorder, and social anxiety disorder. (AR 420.)

At step three, ALJ Kurlander determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 420 .)

At step four, ALJ Kurlander assessed Plaintiff as having the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he is capable of routine and repetitive work and is expected to be off task 5% of the time; he is capable of frequent work around moving machinery, but no work at exposed heights; after any initial new-employee orientation period not to exceed one month in duration, there can be no more than occasional interaction with coworkers and supervisors, and no interaction with the general public. (AR 422.)

The ALJ then concluded Plaintiff had no past relevant work. (AR 430.)

At step five, ALJ Kurlander determined, based on VE Cummings's testimony, that considering Plaintiff's age, education, work experience and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: janitor, packager and laundry worker. (AR 431.) As a result, ALJ Kurlander found Plaintiff not disabled from March 12, 2013, through the date of the decision. (AR 431.)

**B. RFC**

Sheri J. Hixon-Brenenstall, Ph.D., conducted a consultative psychological evaluation of Plaintiff on September 11, 2014. She opined that Plaintiff's social skills appeared sufficient to engage in appropriate interactions with others as one would expect within various employment settings. (AR 339.)

Paul Binks, Ph.D., conducted a second consultative psychological evaluation of Plaintiff two years later, on December 10, 2016. He opined that Plaintiff could have occasional superficial contact with coworkers and supervisors, but no contact with the general public. (AR 368.)

State agency reviewing psychologist Susan Kotler, Ph.D., opined on January 3, 2017, that Plaintiff could perform simple, routine repetitive tasks in a setting that does not require frequent or intensive contact with the public or coworkers. (AR 103.)

At Plaintiff's first hearing, ALJ Shave asked VE Cicero a hypothetical that included the social limitations opined by Dr. Binks: never interacting with the public and only occasional interaction with coworkers and supervisors. (AR 61.) VE Cicero identified the following jobs that such an individual could perform: cleaner, stores labeler, and detailer. (AR 61.) Plaintiff's counsel then asked VE Cicero whether there would be more than occasional contact with a supervisor during the orientation and training period when someone is getting shown how to do those job tasks. (AR 62.) VE Cicero responded affirmatively. (AR 63.) ALJ Shave then posed a modified hypothetical to VE Cicero of an individual who is capable of frequent interaction with a supervisor during orientation or training, but only occasional interaction with supervisors and coworkers on an ongoing basis thereafter. (AR 64.) VE Cicero testified that the cleaner and detailer positions would still be available as the individual would not have constant interaction with the supervisor during the training period. (AR 65-66.)

1     In her decision finding Plaintiff not disabled, ALJ Shave gave significant weight to

2 Dr. Binks's opinions. (AR 22.) ALJ Shave assigned an RFC that Plaintiff could frequently

3 interact with supervisors during orientation or training, but then could only have occasional

4 interaction with supervisors and coworkers on an ongoing basis, and he could never interact with

5 the public. (AR 20.)

6     When the action was voluntarily remanded, the Appeals Council vacated ALJ Shave's

7 decision and remanded the case for resolution of certain issues. The Appeals Council specifically

8 found that ALJ Shave did not explain the basis of her conclusion that Plaintiff is capable of

9 frequent interaction with supervisors during orientation or training in light of Dr. Binks's opinion

10 that Plaintiff is limited to occasional contact with supervisors. (AR 514-515.)

11     On remand, ALJ Kurlander held a hearing and posed a hypothetical to VE Cummings

12 that included an individual who could have occasional interaction with coworkers and

13 supervisors, but no interaction with the general public. VE Cummings responded that such an

14 individual could perform the positions of janitor, packager, and laundry worker. (AR 463.)

15 Plaintiff's counsel then asked VE Cummings whether that individual would have more than

16 occasional contact with supervisors for the orientation period of those positions, and VE

17 Cummings responded affirmatively. (AR 467.) ALJ Kurlander then posed a modified

18 hypothetical that the individual could not have more than occasional interaction with coworkers

19 and supervisors and no interaction with the general public after any initial new employee

20 orientation period (that would not exceed one month). (AR 468.) VE Cummings testified there

21 would be no erosion in the jobs identified under that modified hypothetical. (AR 468.) VE

22 Cummings testified that most jobs have an orientation period for new employees, which is

23 generally two weeks, but could be up to 30 days. (AR 468-469.)

ALJ Kurlander assigned Plaintiff an RFC consistent with his modified hypothetical: after any initial new employee orientation period not exceeding one month in duration, Plaintiff could have no more than occasional interaction with coworkers and supervisors and no interaction with the general public. (AR 422.)

ALJ Kurlander gave Dr. Hixon-Brenenstall's opinions partial weight, stating, in relevant part:

> [I]t is substantially supported by the findings of her mental status exam and psychometric test results. However, I find the claimant is slightly more limited than opined by Dr. Brenenstall, as I find that after any initial new-employee orientation period not to exceed one month in duration, there is to be no more than occasional interaction with coworkers and supervisors, and no interaction with the general public[.] … In assigning these additional limitations, I am giving the claimant the benefit of the doubt as to his subjective complaints of feeling anxiety around groups of people and generally uncomfortable when interact with others, although I also acknowledge that he reports shopping for his own needs, an ability to handle money, spending time with a couple of friends, as well as talking on the phone on a daily basis with his sister and brother.

(AR 427.)

ALJ Kurlander also gave Dr. Binks's opinions partial weight, finding that Plaintiff could have no more than occasional interaction with coworkers and supervisors and no interaction with the general public, but that limitation applied *after* any initial new-employee orientation period not exceeding one month in duration. (AR 429.)

ALJ Kurlander gave Dr. Kotler's opinion partial weight, again concluding that Plaintiff was slightly more limited in that he could have no more than occasional interaction with coworkers and supervisors and no interaction with the general public after any initial new-employee orientation period not exceeding one month. (AR 429-430.) He reiterated that he was giving Plaintiff the benefit of the doubt as to his subjective complaints of feeling anxiety around groups and being generally uncomfortable when interacting with others. (AR 430.)

Plaintiff argues that ALJ Kurlander did not cite any evidence supporting his determination that Plaintiff would have no social interactions during his first month of employment. Instead, Plaintiff contends that ALJ Kurlander invented an RFC that allowed for a significant number of jobs, and in doing so, he improperly manipulated the RFC findings to reach a predetermined outcome of nondisability.

The Acting Commissioner argues that the ALJ did provide a basis for concluding that Plaintiff retained sufficient social skills such that he could attend a training/orientation for the jobs identified: the opinions of consultative examining psychologist, Dr. Hixon-Brenenstall, and State agency reviewing psychologist, Dr. Kotler.

The problem with the Acting Commissioner's argument is that with respect to the social limitations, ALJ Kurlander found that Plaintiff was *more* limited than Dr. Hixon-Brenenstall or Dr. Kotler opined.  The ALJ also adopted Dr. Binks' social limitations except as to a one-month period of new-employee orientation or training. Moreover, Dr. Kotler opined Plaintiff could perform tasks in a setting that does *not* require *frequent or intensive* contact with the public or coworkers. VE Cummings testified that the orientation period would require more than occasional contact with supervisors. (AR 467.) As such, ALJ Kurlander's RFC appears to conflict with Dr. Kotler's opinion that Plaintiff could not engage in frequent or intensive contact with coworkers.

Importantly, despite the Appeals Council's explicit instructions, ALJ Kurlander still did not explain why he credited Dr. Binks' opinion that Plaintiff could have only occasional interaction with coworkers and supervisors and no interaction with the public, but found Plaintiff was capable of frequent interaction with supervisors and coworkers for up to a month during the

1  training or orientation period. The court finds ALJ Kurlander erred in failing to address this

2  conflict, and remand is appropriate on this basis.

3  **C. Dr. Binks's Opinions**

4     Preliminarily, Plaintiff argues that *both* ALJs failed to adequately address Dr. Binks's

5  opinions; however, the Appeals Council already vacated ALJ Shave's decision. Therefore, the

6  court is only concerned with whether ALJ Kurlander adequately addressed Dr. Binks's opinions.

7     Plaintiff argues that ALJ Kurlander did not set forth valid reasons for rejecting

8  Dr. Binks's opinions that Plaintiff would be limited to interacting with supervisors no more than

9  occasionally, and that Plaintiff would be expected to have frequent periods of decompensation.

10     This claim was filed before March 27, 2017; therefore, the following analysis applies[1]:

11     "Courts 'distinguish among the opinions of three types of physicians: (1) those who treat

12  the claimant (treating physicians); (2) those who examine but do not treat the claimant

13  (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

14  physicians).'" *Garrison v. Colvin*, 759 F.3d 995,1012 (9th Cir. 2014) (quoting *Lester v. Chater*,

15  81 F.3d 821, 830 (9th Cir. 1995)).

16     For claims filed before March 27, 2017, 20 C.F.R. §§ 404.1527 and 416.927 govern how

17  an ALJ must weigh medical evidence. Those regulations afford "treating sources" controlling

18  weight in certain circumstances. *See also* Social Security Ruling (SSR) 96-2p, 1996 WL 374188

19  (July 2, 1996).[2] Even when the treating sources are not given controlling weight, they are still

20  entitled to deference. *Id*.

21

22

23

---

[1] New regulations apply to claims filed on or after March 27, 2017, which change the framework of how ALJ's evaluate medical opinion evidence. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

[2] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, in the

The Ninth Circuit has similarly held that "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation marks omitted). "[T]he opinion of a treating physician is thus entitled to greater weight than that of an examining physician, [and] the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Id.* (citation omitted). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be] given controlling weight." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (citation and quotation marks omitted); *see also Revels v. Berryhill*, 874 F.3d 648, 854 (9th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(2)). "The weight afforded a non-examining physician's testimony depends on the degree to which [he or she] provide[s] supporting explanations for [his or her] opinions." *Garrison*, 759 F.3d at 1012 (citation and quotation marks omitted).

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). To reject a treating or examining doctor's opinion that is contradicted by another doctor's opinion, the ALJ must "provid[e] specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (citation and quotation marks omitted).

"[E]ven when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight … even if it does not meet the test for

_____

Ninth Circuit they are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id*. (citation omitted).

Dr. Binks opined, among other things, that Plaintiff could have occasional, superficial contact with coworkers and supervisors, but no contact with the public; and that he could be expected to have frequent periods of decompensation. (AR 368.) Dr. Binks's opinions are contradicted by those of Dr. Hixon-Brenenstall.  Therefore, to reject Dr. Binks's opinions, ALJ Kurlander was required to set forth specific and legitimate reasons supported by substantial evidence.

ALJ Kurlander gave Dr. Binks's opinions partial weight. First, ALJ Kurlander found Dr. Binks's opinions not entirely consistent with the medical evidence of record, stating that Dr. Binks performed a one-time consultative psychological evaluation on December 10, 2016.  On January 3, 2017, the State psychological consultant was aware of his opinions, but did not adopt them verbatim. (AR 429.) While the length, nature, and extent of the treatment relationship are relevant (20 C.F.R. §§ 404.1527(c), 416.927(c)), the only other examining opinion in the record was also a one-time consultative psychological evaluation by Dr. Hixon-Brenenstall. ALJ Kurlander did not discount Dr. Hixon-Brenenstall's opinions on this basis.

Second, ALJ Kurlander noted that Dr. Binks had no medical records to review, citing

14

Dr. Binks's statement that "collateral information was not available," and finding, as a result, that Dr. Binks did not have a longitudinal perspective. (AR 429.) A review of Dr. Binks's report reveals that Dr. Binks *did* review the medical evidence of record provided by DDS, which Dr. Binks considered in the overall assessment of Plaintiff. (AR 364.) Dr. Binks noted that collateral information was not available with respect to Plaintiff's reports of a history of anxiety, schizophrenia, PTSD, and bipolar disorder, which began at age 10. (AR 364.) Therefore, it appears that Dr. Binks did review whatever medical records were provided to him, but not older records documenting Plaintiff's mental health issues, which had not been made available and are not contained with the Administrative Record. In fact, the Administrative Record in this case contains only a few mental health records, and they begin in 2013.

Third, ALJ Kurlander found that Plaintiff was not entirely candid with Dr. Binks, because he denied a history or alcohol or substance abuse, when the record documents a history of cannabis abuse in sustained remission. (AR 429.) Plaintiff's candor is a legitimate area of inquiry for the ALJ.  However, Plaintiff also denied any substance use history to Dr. Hixon-Brenenstall, (though the psychologist did mention that Plaintiff's records documented a history of cannabis abuse in sustained remission). (AR 335.) If Plaintiff's lack of candor regarding his cannabis use history was a reason to discount Dr. Binks's opinions, it should have also been used to discount Dr. Hixon-Brenenstall's opinions.

Fourth, ALJ Kurlander concluded that Dr. Binks's "rather extreme opinion" was speculative and contradicted by Plaintiff's reported activities of daily living and demonstrated abilities on the mental status exam, such as his having friends, being able to drive, play video games, being responsible for taking care of multiple pets, and attaining 28 out of 30 on the MMSE. (AR 429.)

ALJ Kurlander does not explain how Dr. Binks's opinion was speculative. Moreover, as will be discussed in further detail below, none of the cited activities are inconsistent with the social interaction limitations assessed by Dr. Binks.

Finally, ALJ Kurlander did not specifically discuss Dr. Binks's opinion that Plaintiff would have frequent episodes of decompensation as instructed by the Appeals Council. (AR 514.) In fact, ALJ Kurlander does not even mention this opinion in his summary of Dr. Binks's findings. (AR 428-29.) As such, ALJ Kurlander erred.

In sum, the court finds ALJ Kurlander did not set forth specific and legitimate reasons supported by substantial evidence for discounting Dr. Binks's opinions.

**D. Plaintiff's Subjective Symptom Testimony**

**1. Standard for Evaluating Subjective Symptom Testimony**

Evaluating a claimant's subjective symptom testimony "becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001) (citing Social Security Ruling (SSR) 96-7P).[3]

"Such testimony is inherently subjective and difficult to measure." *Coleman v. Saul,* 979 F.3d 751, 755-56 (9th Cir. 2020). This evaluation is often crucial to a finding of disability. *Id.* (citing *Fair v. Bowen,* 885 F.2d 597, 602 (9th Cir. 1989)).

There is a two-step test for evaluating a claimant's subjective symptom testimony:

First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the

---

[3] SSA previously referred to this as a credibility determination. SSR 96-7P. SSA subsequently eliminated use of the term "credibility." SSA has clarified that "subjective symptom evaluation is not an examination of an individual's character." Instead, the adjudicator considers all of the evidence in evaluating the intensity and persistence of a claimant's symptoms. SSR 16-3P.

claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) (internal quotation marks and citations omitted, emphasis original).

An ALJ may consider various factors in evaluating the allegedly disabling subjective symptoms, including: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; treatment, other than medication, received for relief of symptoms; any measures a claimant has used to relieve symptoms; and other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c), § 416.929(c); SSR 16-3P.

**2. Plaintiff's Testimony**

Plaintiff testified that he was 27 years old at the time of the second hearing. He lived with his mother and brother. He did not complete high school and does not have a GED. He dropped out of school because he would have panic attacks that caused him to black out.

He testified that he could not work because of his mental health issues, including having panic attacks, not being able to go anywhere or be in large groups of people (which he defined as 5-6 people), and he experiences manic upswings and downswings in mood. When he has a manic downswing, he is depressed and does not want to get out of bed. In a manic upswing, he does not

sleep for long periods of time. He goes through these swings every couple of months. He was not receiving treatment for his mental health issues because he felt the doctors only tried to put him on medications that caused side effects that were worse than his symptoms. He also experiences shakiness in his hands constantly, and sometimes in his legs. He testified that he experiences bad days every day or two. Sometimes his mood swings result in angry outbursts. He tries to avoid crowds, which trigger his anxiety.

He can drive, although he does not have a driver's license. He plays video games once in a while and builds things. He takes care of pets. He has no problems with personal care, but he needs to be reminded to take a shower. He prepares meals such as sandwiches and ramen weekly. He goes outside, but he does not go into town. On a good day, he might be able to go to the store.  On a bad day, he has to stay home.  He also testified that when his mother goes shopping, he will go and stay in the car. He talks to his brother and sister on the phone daily. He will go to his grandmother's house when she calls him or needs his help. Otherwise, he does not go out and does not date or go to social functions because he cannot handle crowds. When asked if he has problems getting along with family, friends, neighbors or others, he responded: "No, I mind my own business." (AR 255-261, 449-461.)

**3. Analysis**

ALJ Kurlander found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  However, he found Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical and other evidence in the record. (AR 423.) As such, the court must determine whether ALJ Kurlander set forth specific, clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom statements.

ALJ Kurlander said that Plaintiff's activities of daily living show he is not as limited as alleged. ALJ Kurlander pointed out that Plaintiff takes care of his personal care; he refuses to take any medications; he cares for pets, prepares simple meals and helps with mowing, weeding, and cleaning; he goes outside in the yard; when he goes out, he travels by riding in a car; he drives a car (but does not have a driver's license); he can pay bills and count change; he plays video games, fiddles with electronics and works on cars; he talks to his sister and brother on the phone on a daily basis; he goes to his grandmother's house on a regular basis; he has no problems getting along with others; he finishes what he starts and follows spoken instructions well; and changes in routine do not bother him. (AR 423-24.)

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (citations omitted). "Recognizing that 'disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations,' we have held that '[o]nly if [his] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [his] credibility.'" *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

ALJ Kurlander does not explain how any of the activities listed are inconsistent with Plaintiff's claimed social limitations. Chiefly, Plaintiff claims he cannot work because he has anxiety and panic attacks, fears crowds of more than 5 or 6 people, and has bipolar mood swings. Being able to engage in personal care, prepare a few simple meals, doing chores and limited hobbies alone are not at odds with Plaintiff's fear of being around larger groups of people. Nor is the fact that Plaintiff talks to his brother and sister on the phone and goes to his grandmother's house incongruent with his claimed limitations. ALJ Kurlander says that Plaintiff has no

problems getting along with others, but Plaintiff's statement was that he does not have a problem *because he minds his own business*. While Plaintiff testified that he could go to the store to buy a pack of cigarettes on a good day. However, he testified he has bad days every couple of days. There was no question about how many people he was around in the store or whether he avoided people while in the store. He also testified that when his mother goes shopping, he sits in the car with the doors locked. ALJ Kurlander pointed out that Plaintiff refuses to take medication, but Plaintiff testified that he does not take medication because the side effects were worse than his symptoms.

In sum, the court finds that ALJ Kurlander did not set forth specific, clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom statements.

**E. Remand**

Plaintiff argues that his case should be remanded for the payment of benefits under the credit-as-true rule. The Acting Commissioner contends the proper remedy is remand for further administrative proceedings.

The credit-as-true rule "permits, but does not require, a direct award of benefits on review but only where the [ALJ] has not provided sufficient reasoning for rejecting testimony and there are no outstanding issues on which further proceedings in the administrative court would be useful. Then, and only under these circumstances, if a claimant's testimony is credited as true an award of benefits *may* be appropriate." *Leon v. Berryhill*, (9th Cir. Jan. 25, 2018) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101-02 (9th Cir. 2014)). "An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Id.* (citing *Treichler*, 775 F.3d at 1100).

"First, we ask whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Id. (citing Garrison,* 759 F.3d at 1020). "Next, we determine 'whether there are outstanding issues that must be resolved before a disability determination can be made , …and whether further administrative proceedings would be useful.'" *Id.* (quoting *Treichler,* 775 F.3d at 1101)). "When these first two conditions are satisfied, we then credit the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability." *Id.* (quoting *Treichler*, 775 F.3d at 1101) (internal quotation marks omitted).

The court declines to remand for an award of benefits. The court finds the ALJ failed to provide legally sufficient reasons for rejecting evidence.  However, there remain issues that must be resolved at the hearing level before a disability determination can be made. For example, it is unclear whether jobs exist that Plaintiff could perform that would require only occasional contact with supervisors or coworkers during the orientation or training period, in order to be consistent with Dr. Binks's assessed social limitations. In addition, an ALJ must actually assess Dr. Binks' opinion that Plaintiff would suffer from episodes of decompensation. The Acting Commissioner is cautioned, however, that because the ALJs have already had two "bites at the apple" on this issue, a future error in this regard may well result in a remand for payment of benefits.

/ / /

/ / /

/ / /

## IV. CONCLUSION

Plaintiff's motion for reversal and/or remand (ECF No. 20) is **GRANTED**;

The Commissioner's cross-motion (ECF No. 21) is **DENIED**;

This matter is **REMANDED** for further proceedings consistent with this Order.

The Clerk shall enter **JUDGMENT** accordingly.

**IT IS HEREBY ORDERED.**


Dated: April 6, 2022

_____
Craig S. Denney
United States Magistrate Judge